## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

CLENDENNING'S ADM'R V. THOMPSON'S EX'OR AND OTHERS.

JUNE 13, 1895.

Absent, Keith, P.*

1. STATUTE OF LIMITATIONS—*Presumption of Payment—Case at Bar.*—The
   statute of limitations, when applicable, presents an absolute bar to the
   claim asserted. A presumption of payment short of the period of the
   statutory bar may arise from the lapse of time, the condition of the
   parties, their relations and dealings with one another, or other cause, but
   this presumption is a mere rule of evidence, deduced from the ordinary
   dealings of men with one another, and may be overcome by proof ex-
   planatory of the facts relied on in support of the presumption and in-
   consistent with such presumption. The evidence in this suit supports
   the presumption of payment, and is not overcome by evidence to the
   contrary.

Argued at Richmond.    Decided at Wytheville.

Appeal from a decree of the Circuit Court of Loudoun
county, pronounced January 22, 1892, in a chancery suit
wherein the appellee, Thompson's Administrator was the com-
plainant, and the appellant and others were the defendants.

*Affirmed.*

The opinion states the case.

_____

*Judge Keith had decided the case in the court below.

Opinion.

*Lee & Janney* and *Brooke & Scott*, for the appellant.

*Eppa Hunton, Jr.*, and *Edward Nichols*, for the appellees.

HARRISON, J., delivered the opinion of the court.

On the 13th day of March, 1888, action was brought on the law side of the Circuit Court of Loudoun county, in the name of Thomas E. Hough, administrator of William Hough, deceased, who was trustee for Elizabeth A. Clendenning, for the use of H. H. Russell, sheriff of Loudoun county, and as such, administrator of Elizabeth A. Clendenning, deceased, against Harrison Osborne, executor of John H. Thompson, deceased, on the following bond:

"One day after date, I bind myself to pay William Hough in trust for Elizabeth A. Clendenning, thirty-five hundred dollars, for value received.

Witness my hand and seal this 20th day of April, 1868.

(Signed)    JOHN H. THOMPSON. [Seal.]"

After certain proceedings were taken as to the pleadings, and before any trial of the case, on the 5th of May, 1890, Harrison Osborne, executor of John H. Thompson, deceased, filed in the said Circuit Court a bill in equity against the plaintiff in the suit at law and others enjoining them from proceeding at law, and setting up, as a defense to the bond sued on, accord and satisfaction, the presumption of payment arising from the relations of the parties and transactions between them, laches in the assertion of the claim, lapse of time, though less than twenty-years, and other circumstances showing the settlement and satisfaction of said bond. This bill was demurred to, answered, and the demurrer was overruled. An amended bill was filed and likewise demurred to, answered, and the demurrer overruled.

In the progress of this suit the court required the defendant in the suit at law to confess judgment.

On the 22d day of January, 1892, the injunction suit was heard, when the court, being of opinion that the presumption of payment attached to the bond in controversy, so decreed, and ordered that the judgment confessed in favor of the plaintiff in the law suit, be set aside, and the injunction perpetuated. It is this decree we are now called upon to review.

The action at law was brought in the name of the representatives of the beneficial payee in the bond against the representative of the obligor, and the defence was that the bond had been satisfied to William Clendenning, the husband of the beneficial payee, who, it is claimed, had the right to reduce the same into possession. It is contended that this defence could not be made at law, and could be made alone in equity; that the technical nature of the legal pleading does not permit the defence of accord and satisfaction, and payment to the husband of the *cestui que trust*, or her distributees at law, or legatees, in an action at law in the name of the personal representatives of the payee of the bond; that this *post* nuptial chose in action was reduced into possession by William Clendenning, and that it would be impossible to set up this presumption of payment to him in any action at law in the name of the administrator of the trustee named in the bond. While we are inclined to think that the appellees had the right to maintain the suit in equity, in order to properly make their defence, we are not called upon to express an opinion upon that point, as the appellant at the bar of this court waives his assignment of error to the action of the lower court on his demurrer to the original and amended bills, and asks that the case be now considered and disposed of on its merits.

The real question is, Do the facts in this case raise such a presumption of the payment of the bond in controversy as to justify the decree appealed from?

There is a recognized distinction between the statute of

limitations, and the presumption of payment from lapse of time, the condition of the parties, their relations toward each other, &c. In the former case the bar is absolute; in the latter it is a rule of evidence, not of pleading, and simply raises a presumption of payment. It is founded upon the idea that, in the ordinary course of human affairs, it is not usual for men to allow real and well-founded claims to lie dormant an unreasonable length of time. Starkie on Evidence, 72. Those who sleep upon their rights have never met with encouragement from a court of equity.

A brief statement of the facts disclosed by the record will suffice to show the wisdom of this rule, and the justice of its application in determining this controversy.

John H. Thompson, the obligor in the bond sued on, was a wealthy bachelor, living in the county of Loudoun, worth at the date of the bond, in assessed values, $50,000, and at the time of his death in 1884, $120,000. He is shown to have been a successful and prudent business man, prompt in the payment of every obligation, and died without owing a dollar, unless the claim here asserted is an outstanding liability against his estate.

William Clendenning, the husband of Elizabeth A. Clendenning, the beneficial payee in said bond, was a member of a firm of cotton brokers in Baltimore, and appears to have been the only member of that firm who had any considerable means. In April, 1871, this firm failed for a large sum of money, over $60,000, and bankruptcy stared William Clendenning in the face. Mrs. Clendenning was a favorite cousin of John H. Thompson, and through her influence, said Thompson came to the rescue of her husband, and undertook to settle this large indebtedness with the creditors of the Baltimore firm. To this end William Clendenning conveyed to John H. Thompson property valued at about $15,000, including two farms in Loudoun county, valued at $12,160.

After this Thompson raised large sums of money, having two notes of $10,000 each, discounted at one time, at the Loudoun National Bank, and proceeded to compromise and settle the debts of William Clendenning growing out of the failure of his firm, at thirty-five cents on the dollar. As Thompson would settle these debts he would take an assignment of them to himself, and in March, 1872, William Clendenning confessed judgment in favor of John H. Thompson for $40,343; Thompson holding, besides this judgment, a large amount of other indebtedness of Hough, Clendenning & Co., which he had settled.

From the date of this failure to the time of his death, the evidence shows that William Clendenning was hard pressed for means. There is nothing in the record to show that Mrs. Clendenning was worth any estate of her own, unless the bond in question was an outstanding, subsisting obligation.

If this bond was a living obligation in April, 1871, in the hands of Mrs. Clendenning, against the wealthy friend and relative, when she was appealing to him to come to the aid of her husband, in his great financial stress, it would at least seem probable that it would have formed part of the scant assets furnished by Clendenning and his wife with which to avert the tremendous load of debt which was about to overwhelm him.

Mrs. Clendenning died the 29th of April, 1879, leaving no children, and her husband surviving. Whatever may be said as to the power of William Clendenning to have converted this bond to his own use during his wife's lifetime, certain it is that from the time of her death it was his, not only as her sole distributee, but as her legatee under the terms of a will left by her, giving her property to him. That Mrs. Clendenning left no property would seem to be plainly indicated by the fact that William Clendenning never had her will recorded, and never qualified as her administrator.

It appears from the evidence that John H. Thompson successfully carried out his scheme in aid of the Clendennings, and with most gratifying results to William Clendenning, for on the 27th of November, 1879, and again on the 23d day of December of that year, more than eight years after Thompson had undertaken the task, and after innumerable transactions growing out of this and other matters, these two neighbors got together and made a full and complete settlement of all outstanding matters between them.

As the result of this settlement, Thompson marked the large judgment he held against Clendenning, satisfied, and re-conveyed to him the land in Loudoun county, which Cendenning had conveyed to Thompson when he undertook the settlement of his debts, and, upon final accounting of everything, it was ascertained that Clendenning owed Thompson a balance of $5,000, which was closed by Clendenning executing his bond for said $5,000, payable in ten years, with interest, and securing the same by a contemporaneous deed of trust on the real estate thus re-conveyed to him.

At the time this settlement was made, Mrs. Clendenning was dead, and William Clendenning was the absolute owner of the bond in controversy, and it is incredible that, in making this settlement, covering a number of years and innumerable transactions, he would have closed it, and executed his bond to John H. Thompson for the sum of $5,000 as the final balance due him, when, at that very time, he was the owner of the bond against Thompson, amounting, principal and interest, to about $6,000. In answer to this it is said that, at the time of the settlement, Clendenning did not know of the existence of the bond.

That Mrs. Clendenning, a faithful wife as the record shows, ever ready to aid her husband, could have been, during all those years of financial trouble, the owner of a solvent bond against her wealthy relative for $3,500 and accumulating in-

terest, without her husband knowing it, or ever hearing of it, is so foreign to the ordinary and usual experience of life, that it cannot be accepted as a sufficient explanation for the bond not being forthcoming when Clendenning made the settlement with Thompson, and executed his bond for $5,000 as the balance due, especially when that explanation is offered by strangers, without knowledge of the facts, and not by Clendenning himself.

The record shows that William Clendenning lived until January 14, 1883, nearly four years after his wife's death, and died in absolute ignorance of the existence of this bond as an outstanding debt against John H. Thompson. Before his death, to-wit: on March 8, 1882, he executed to John H. Thompson another bond for $372, and on the 5th of October, 1882, still another bond for $300.

S. D. Leslie and W. D. Thompson qualified as executors of William Clendenning, deceased, and on the 30th day of March, 1883, they paid to John H. Thompson, $5,778.83, in full discharge of the three bonds of $5,000, $373, and $300, with unpaid interest, held by him against their testator's estate.

The weight of evidence shows that this payment was made after the bond in question had been found by W. D. Thompson, one of the executors and a legatee of William Clendenning, in an old portfolio of Mrs. Clendenning, with some cook receipts and other valueless papers. This large payment to Thompson was also after he had heard of the finding of this bond, and had declared to Clendenning's executors that the bond was settled long ago and belonged to him.

The weight of evidence indicates that the executors of Clendenning understood that this bond had no valid existence, and should be surrendered to Thompson. Leslie, one of the executors, did surrender to him another bond for $600, perfect

on its face, which had been executed by Thompson to Clendenning and found among the latter's papers.

John H. Thompson died February 14, 1884, nearly one year after this bond was found, and yet it was never shown to him, nor payment demanded. He left an estate worth $120,000 to settle which a suit was brought in Loudoun county. Under a decree in that suit, a call was made by a master commissioner for creditors of Thompson to come forward and prove their debts against his estate. Not one dollar of debt was presented. The executors of Clendenning never presented this bond to the commissioner to be audited, and made no demand upon the executor of Thompson for it.

Thus matters stood until March 13, 1888, within one month and seven days of the absolute statutory bar of twenty years, and four years after the death of John H. Thompson, when this suit was instituted.

There are many other circumstances disclosed by the record which indicate that this bond is not a valid outstanding obligation against the estate of John H. Thompson. It would, however, extend this opinion to an unnecessary length, to recite the facts further. Enough has been stated to justify the conclusion that the appellants are not entitled to the relief sought.

The circumstances of this case, together with the relations of the parties, the transactions between them, laches in the assertion of the claim, and lapse of time, are not only sufficient to raise the presumption of payment, but they lead the mind without difficulty to the conviction that this bond has long since been settled.

It is a wise and salutary rule that forbids us to encourage stale claims. The peace, and repose of society depend upon the judicious application of this principle.

No man's estate would be safe, unless the door was, at

some time, and under some circumstances, closed against demands upon it.

The view taken of this case makes it unnecessary to consider other interesting questions, suggested in the petition for appeal, and in argument.

The decree appealed from is right and must be affirmed.

AFFIRMED.