# CIRCUIT COURT FOR THE CITY OF NORFOLK

Minnesota Life
Insurance Co.

v.

Ja'sahn Brown,
Beverly Brown,
and Beta Capital Corp.

November 21, 2012

Case No. (Civil) CL12-1984

By Judge Mary Jane Hall

The matter came before the Court on November 7, 2012, for trial of competing claims to life insurance proceeds that have been interpleaded with the Court by Minnesota Life Insurance Company, insurer of Edward Brown, Sr., deceased. The issue presented by this case is one on which Virginia case law or statutory authority offers little guidance: whether a duly-appointed conservator for an incapacitated person may revoke a beneficiary designation for her ward's life insurance benefits and designate a different beneficiary.

The original designated beneficiary, Beverly Brown, argues that the onset of incapacity renders a prior designation irrevocable. For the reasons stated herein, the Court concludes otherwise. The Court rules instead that the desire of an incapacitated person with sufficient ability to advise his guardian/conservator about his testamentary wishes may be validly effected by the conservator. The Court is satisfied that the conservator in this case revoked her father's original beneficiary designation because he expressed his desire that she do so, and the Court therefore gives effect to her action. The Court accepts the claims of Ja'Sahn Brown and Beta Capital Corporation and rejects the claim of Beverly Brown.

## *Factual background*

The following chronology of events has been established by the evidence. Edward Brown, Sr. ("Brown"), father of Ja'Sahn Brown, married Beverly Brown in 2003. On March 5, 2003, Brown designated Beverly Brown as the beneficiary of his Virginia Retirement System life insurance policy, issued by Minnesota Life Insurance Company.

On November 19, 2005, Brown suffered an anoxic brain injury which rendered him mentally and physically incapacitated. He was hospitalized for several months and initially unable to walk, speak, eat without a feeding tube, or care for himself at all. On February 16, 2006, Beverly Brown was appointed guardian and conservator for Brown. A number of incidents followed almost immediately, giving rise to substantial concern by Brown's family that Beverly Brown was abusing and/or neglecting her husband and his medical needs and controlling his finances with no accounting. Ja'Sahn Brown initiated contact with the guardian *ad litem* for redress.

On April 28, 2006, as a result of alleged abuse and neglect, Beverly Brown was removed as guardian/conservator and Jewish Family Services (JFS) was appointed in her place. On June 19, 2007, Ja'Sahn Brown was appointed guardian/conservator for her father, replacing Jewish Family Services in that role. Brown moved in with Ja'Sahn Brown, who cared for him and supported him for the next four years until his death. Through 2008, as Brown received occupational therapy, speech therapy, and physical therapy, his condition gradually improved to the level where he could exercise certain tasks on his own. He regained the ability to walk, to eat independently, and to speak. Beverly Brown did not visit her husband from 2008 until his death. In January or February of 2010, as part of the process to effect her father's retirement from the Indian Creek Correctional Center, Ja'Sahn Brown asked her father whether he wanted any benefits to be left to Beverly Brown, and he told her that he did not. On February 9, 2010, Ja'Sahn Brown executed a Designation of Beneficiary form (Defendant's Exhibit 4) for her father's Minnesota Life policy, revoking his prior designation and designating herself as the beneficiary. She signed the form in her capacity as "guardian and conservator for Edward V. Brown, Sr."

Brown passed away on September 28, 2011. On September 29, 2011, Ja'Sahn Brown executed an Irrevocable Assignment and Power of attorney, assigning to Beach Funeral and Cremation Services, Inc., the right to be paid from the Minnesota Life insurance policy for her father's funeral expenses. Beach Funeral subsequently assigned its right to be paid from this policy to Beta Capital Corporation. By the terms of this assignment, Beta Capital is requesting an award of the original amount of $8,140.06 plus costs, attorney's fees, and interest from the interpleaded funds. By Order dated May 21, 2012, Minnesota Life properly interpleaded the sum of $66,238.08 with the Clerk of this Court.

■■■■■■■

*Legal Analysis*

Virginia Code § 64.2-2009 gives the Court jurisdiction to define the powers of guardians and conservators upon appointment with the goal of "permit[ting] the incapacitated person to care for himself and manage property to the extent he is capable." In this case, the Court granted Ja'Sahn Brown those powers defined by statute under Va. Code §§ 37.2-1000 *et seq.* (now codified as Va. Code §§ 64.2-2000 *et seq.*). Va. Code § 64.2-2021 requires that the conservator "shall exercise reasonable care, diligence, and prudence and shall act in the best interest of the incapacitated person. *To the extent known to him, a conservator shall consider the expressed desires and personal values of the incapacitated person.*" (Emphasis added.) Va. Code § 64.2-2022 sets out the duties and powers of a conservator and enumerates the powers such a person may exercise without prior authorization of the court. These powers include the ability to "execute and deliver all instruments and to take all other actions that will serve in the best interests of the incapacitated person." Va. Code § 64.2-2022(A)(5).

Beverly Brown claims that Ja'Sahn Brown's modification of the beneficiary designation lacks validity because a guardian or conservator may not make such a change for a person who has no capacity to do it himself. In support of her position, Beverly Brown cites *Shands v. Shands*, 175 Va. 156, 7 S.E.2d 112 (1940), and *Bryson v. Turnbull*, 194 Va. 528, 74 S.E.2d 180 (1953). In *Shands*, the Court held only that a guardian appointed to manage the property of an incompetent person must return that property to the incapacitated owner upon restoration of capacity of the owner. 175 Va. at 160. The specific question at issue here, whether a guardian may dispose of the incapacitated person's property contrary to previous direction, was not addressed.

*Bryson* is much more factually similar to the instant case. In *Bryson*, the testator had become mentally incapacitated after executing a will, and she was appointed a guardian, who allowed timber to be removed from her property. The question for the Court was whether the proceeds of the timber should pass as realty to the beneficiaries, who were to inherit the real property, or as personalty to different beneficiaries. Ruling that the timber proceeds must pass as realty, the Court used language that supports Beverly Brown's position herein: "Under these circumstances, the intent [the testator] exercised when she made her will was never changed. The opportunity to change her intentions was denied her. The intervention of mental incompetency demands this conclusion." *Bryson*, 194 Va. at 533. The Court expressly held, "Neither the committee nor the court can rewrite the will or change the beneficiaries named therein. . . . The will cannot be revoked or modified." *Id.* at 537-38.

Read in isolation, that holding indeed suggests that a guardian or conservator must not be permitted to change her ward's beneficiary after the onset of mental incapacity. The *Bryson* Court did not address, however,

whether the incapacitated person had stated any desire about the disposition of the property. The opinion reveals nothing about the nature of her incapacity. It does not refer to any evidence offered about her desire or her ability to express any desire.

The current statute, not applicable in *Bryson*, does contemplate that a conservator will heed the wishes her ward expressed during the conservatorship. As one recent case has held:

> The appointment of a guardian/conservator, under Code § 37.2-1000 *et seq.* and a determination that the ward is incapacitated does not, in itself, mean the ward is incapable of making any decisions. In fact, Code § 37.2-1020(E) requires the guardian, to the extent feasible, to encourage the ward to participate in decisions. The guardian shall consider the expressed desires and personal values of the ward. Thus, the legislature envisioned that some incapacitated persons have the ability to make decisions and to consider their own needs and interests.

*Andrews v. Creacey*, 56 Va. App. 606, 621, 696 S.E.2d 218, 225 (2010). In order to be found incapacitated, thus requiring appointment of a conservator, a Court need find only that the individual lacks capacity to "manage property or financial affairs or provide for his support" without a conservator's assistance. Va. Code § 64.2-2000.

The most instructive case cited to the Court is *Parish v. Parish*, 281 Va. 191, 704 S.E.2d 99 (2011), where the Court approved a will made by a testator who was under a guardianship at the time: "The mere fact that one is under a conservatorship is not an adjudication of insanity and does not create a presumption of incapacity." *Id.* at 198. The Court relied upon *Thomason v. Carlton*, 221 Va. 845, 852, 276 S.E.2d 171, 175 (1981):

> Neither sickness nor impaired intellect is sufficient, standing alone, to render a will invalid. If, at the time of its execution, the testatrix was capable of recollecting her property, the natural objects of her bounty and their claims upon her, knew the business about which she was engaged and how she wished to dispose of her property, that is sufficient.

*Id.*

If an incapacitated person may have sufficient capacity to make a will, it follows that he may likewise have sufficient capacity to direct a change in his life insurance beneficiary designation. Both are testamentary decisions that take effect at death. Arguing against the application of *Parish*, Beverly Brown argues that the evidential support for the testator's capacity in that case was far stronger than what has been presented in support of Brown's

capacity. In *Parish*, the proponent of the will offered testimony from a paralegal and a witness present when the testator signed the will, both of whom were satisfied that he had known what he was doing. He presented the testimony of a treating physician and a social worker who saw the testator regularly, the attorney in the conservatorship, and two family members, all of whom confirmed his ability to make a will. All of this testimony was offered to rebut the testimony of the testator's son, the contestant of the will, his daughter-in-law, and a treating neurologist, who opined that the testator was not competent to make a will. *See Parish*, 281 Va. at 200-01.

While it is unquestionably true that the *Parish* trial judge had much more evidence of the testator's capacity at the time he made his will than has been presented to this Court regarding Brown's capacity, the *Parish* holding was not conditioned upon the type or the amount of evidence offered. It held only that capacity must be proven by a preponderance of the evidence.

The only witness about Brown's stated desire that Beverly Brown should not receive benefits came from Ja'Sahn Brown. That evidence, while not overwhelming, was not controverted. It was generally corroborated by the testimony of family members who described meaningful conversations with Brown that they had had during the period of Ja'Sahn Brown's conservatorship. No other specific evidence that Brown intended to withdraw any financial benefit from Beverly Brown was offered, but the general testimony that he could express his wishes to a limited degree, that he was fond of his daughter and wanted to remain with her, and that he did not wish to see or go back to Beverly Brown, all corroborates Ja'Sahn Brown's testimony. Although the *Parish* holding rested upon much stronger evidence in support of capacity than is present in the instant case, *Parish* also had evidence on both sides of the capacity issue. In contrast, Beverly Brown offered no evidence whatever either that her husband lacked the capacity to make a change to his designation or that he in fact gave no such instruction to his daughter. Beverly Brown offered no testimony at all.

Therefore, while fully acknowledging that Ja'Sahn Brown would have improved her position with more evidence along the type that the prevailing party in *Parish* offered, the evidence that she did submit about her father's capacity and his wish to change his beneficiary was not controverted. That Brown should prefer to confer a benefit on his daughter who took him in and cared for him during his last four years of life, rather than on a spouse of just a few years, who was removed as guardian for malfeasance and who had no contact with him for his last three years, is a conclusion that was supported by a preponderance of the evidence. The Court therefore finds that Ja'Sahn Brown revoked the beneficiary designation because her father desired and directed that she do so.

Beta Capital Corporation, which seeks to uphold the validity of the revocation, advances the argument that a guardian/conservator may change

an insurance beneficiary designation for an incapacitated person with his or her substituted judgment as a matter of law. The Court does not reach that issue, because the Court finds that Brown intended to change his beneficiary and sufficiently communicated that instruction to Ja'Sahn Brown.

The Court upholds the validity of the revocation of Beverly Brown as the designated beneficiary and directs that the insurance proceeds be distributed to Beta Capital Corporation in the amount of $8,140.86 plus attorney's fees of $2,713.35, plus interest at the rate of 6% *per annum* from September 28, 2011. The Court is awarding interest at the legal rate established by Va. Code § 6.2-301 and not the requested rate of 18% due to possible usury implications. If counsel wishes to be heard in defense of the 18% request, she should submit authority in support of the request within twenty-one days. The balance of the insurance proceeds is to be distributed to Ja'Sahn Brown.

The Clerk is directed to send copies of this Order to all counsel of record. Pursuant to Rule 1:13, endorsements of counsel are waived. Counsel and/or any unrepresented parties are directed to submit written objections to this Order within ten days. It is so ordered.