# Wytheville.

FRANK J. SCHMITT AND MYRTLE E. SCHMITT, v.
H. CARTER REDD AND J. H. RIVES, JR., RECEIVERS.

June 14, 1928.

The opinion states the case.

*George Bryan* and *Hardin Harris*, for the plaintiffs in error.

*H. Carter Redd* and *J. H. Rives, Jr.*, for the defendants in error.

CHICHESTER, J., delivered the opinion of the court.

This is an action by notice of motion for judgment, by H. Carter Redd and J. H. Rives, Jr., receivers,

against Frank J. Schmitt and Myrtle E. Schmitt, upon a negotiable note for $2,000.00 made by Frank J. and Myrtle E. Schmitt, and payable to one Robert H. Purvis.

The receivers recovered a judgment for $2,000.00 with interest and costs against the Schmitts in the Law and Equity Court of the city of Richmond where the cause was heard without the intervention of a jury, and a writ of error was duly allowed from this judgment.

So far as this controversy is concerned the essential facts out of which it grew are as follows: Robert H. Purvis sold to the Schmitts a farm in Stafford county, Virginia, known as "Judyville Farm" for $67,500.00, two thousand ($2,000.00) dollars of which was paid by an unsecured note due ninety days from its date (Oct. 1, 1919) and payable to Robert H. Purvis. The balance of the purchase price was secured by several deeds of trust. "Judyville Farm" was afterwards (Oct. 5, 1920) traded, through Purvis, for another farm, and on that date the note for $2,000.00 above referred to was renewed. This renewal is the note sued on.

The defendants filed a plea of "*nil debet*," and the particulars of their defense, as far as it is necessary to quote for the purpose of this case, are as follows: "For the particulars of their defense, the defendants come and say that the note herein sued on is a renewal note of a note executed by the defendants, in the same sum on March 8, 1920, as a part of the purchase price of Judyville Farm, purchased on said date from Robert H. Purvis, the payee of the said note.

\*  \*  \*  \*  \*  \*

"2. That the defendants have fully paid the said note by sale and delivery to Robert H. Purvis, payee and then equitable owner of the said note, and by agreement made to apply said credits in satisfaction of

said note, the following personalty, on the dates and at prices set out:

| | |
|---|---:|
| January 26, 1921—29,920 lbs. Hay — $35.00 per ton | $523.60 |
| February 14, 1921—25,775 lbs. Hay — $35.00 per ton | 461.06 |
| February 16, 1921—26,370 lbs. Hay — $35.00 per ton | 461.47 |
| February 19, 1921—27,940 lbs. Hay — $35.00 per ton | 488.97 |
| February 12, 1921—3 tons Hay — $35.00 per ton | 105.00 |
| February 12, 1921—50 Bu. Corn | 55.00 |

$ 2,095.10

"3. Such other defenses as are admissible under the general issue of '*nil debet.*'

"FRANK J. SCHMITT &
"MYRTLE E. SCHMITT."

The receivers, who were the plaintiffs below, introduced the note, without further evidence, relying upon the presumption of non-payment because of the possession of the note by the payee.

The defendants relied on their claim of payment as set out in their particulars of defense, so that the sole question in the case as it is presented to us upon the writ of error is, has the presumption of non-payment been overcome as a matter of law by the evidence of payment introduced on behalf of the defendants; or, expressed in another way, was there a conflict in the evidence which left the issue one for the jury.

The trial court heard the case upon the presentation of the note by the receivers; on an agreed statement of facts, as to its history, which it is not necessary to include verbatim here, as it is only an amplification of the statement of facts heretofore made in many particulars; and upon the testimony of witnesses, the defendants and Mrs. Lehman.

The agreed statement showed, as found by the trial court:

(1) Purvis failed to pay his note in the bank and the Central National Bank was undertaking to collect the collateral.

(2) The note in suit matured.

(3) Geo. J. Moritz obtained judgment against Purvis and garnished the bank.

(4) Purvis sold to J. M. W. Green his interest in the pledged collateral after the claims of the bank and the garnishee judgment had been settled.

(5) Green paid the bank the balance due it except $——.

(6) In the garnishee proceedings the court appointed the plaintiffs receivers to take charge of the pledged collateral after settlement of the debt due the bank.

(7) The receivers paid the balance of $85.00 to the bank and secured the pledged collateral.

(8) The receivers brought action against the Schmitts on their note.

(9) Schmitt defended on the grounds (a) that there was fraud in the procurement; (b) that the note had been paid by the shipment to Purvis before maturity of —— tons of hay.

The trial court upon the whole case concluded that the alleged fraud in procurement was not proved and that the claim of payment by the defendant had not been sustained.

The trial court held, and properly, that the receivers stand in Purvis' shoes except as to $85.00 not in controversy, that is to say, the receivers are not holders in due course.

The net result, as stated, is that the receivers rely upon the presumption of non-payment and some alleged contradictions and inconsistencies in the testimony of the defendants, while the defendants assert that they have rebutted the presumption of non-pay-

ment as a matter of law by positive uncontradicted evidence, which is not in conflict with the possession by the defendants of the note in question, but which explains the possession.

We think the trial court erred in its judgment, and that the evidence introduced on behalf of the defendants clearly shows payment of the note and explains the possession by the receivers, thus overcoming, as a matter of law, the presumption of non-payment arising from the possession of the note by the payee. In this view of the case it is not necessary to consider the question of fraud in procurement.

■■ The presumption of non-payment on which plaintiffs rely is based upon the theory of probabilities, on the common experience that when a note is paid, the payer usually secures its possession or has it stamped "paid." It is not a strong presumption, nor does it arise from provision of the negotiable instruments law as many other presumptions do. See sections 5586, 5698, 5621 of the Code. Judge Prentis, in *Hall Building Corp.* v. *Edwards*, 142 Va. 209, 128 S. E. 521, said: "There is doubtless a presumption of payment, but it is not a conclusive presumption." And, he proceeded: "One significant fact in this case is that the debtor not only never demanded or received his note, but recognized it as still due, and paid interest thereon for several years after the transaction in question." (The converse of this latter proposition is true in the instant case, as will be seen later. Purvis never presented the note for payment or collected interest on it for a period of about six years, a most significant circumstance indicating payment.)

■ As opposed to this presumption of non-payment three eyewitnesses and actors all testified directly and positively as to the circumstances under which the

note was executed, its payment then after in hay and the shipment of the hay. They produced Richmond, Fredericksburg and Potomac Railroad Company bills of lading showing the shipment of the hay according to the statement set out above, and they all testify positively that Purvis never paid for the hay. They testify that the reason Purvis did not deliver the cancelled note to them was because it was paid after banking hours and he, Purvis, told them the note was in the bank and he could not get it.

Purvis, the only other party to the transaction, for some unexplained reason, failed to testify, and he could have added positive testimony in support of, or in rebuttal of, the presumption upon which the receivers rely. The circumstances further show that Purvis and the defendants treated the note as paid and there never was any demand on the part of Purvis or any one for him for the payment of the principal or interest from the date of the shipment of the hay down to just prior to the institution of the instant suit, a period of more than six years. The record shows that Purvis was a real estate operator and usually hard pressed for money, while on the other hand the defendants though possessing moderate means could have paid the note if demand had been made upon them to do so.

In *Perkins* v. *Hawkins*, 9 Gratt. (50 Va.) 649, it was held that "payment may be inferred by the jury from circumstances coupled with the lapse of a shorter period than twenty years. 2 Greenl. Ev. No. 528; Best on Presumption, No. 537. And therefore on the trial of an issue made up on a plea of payment, evidence tending to show on the one hand that the creditor was in want of money, and on the other, that the debtor had the means of payment when the

debt became due and afterwards, is admissible evidence to be weighed by the jury."

Again in *Clendenning* v. *Thompson*, 91 Va. 518, 22 S. E. 233, the court held: "The statute of limitations, when applicable, presents an absolute bar to the claim asserted. A presumption of payment short of the period of the statutory bar may arise from the lapse of time, the condition of the parties, their relations and dealings with one another, or other causes, but this presumption is a mere rule of evidence, deduced from the ordinary dealings of men with one another, and may be overcome by proof explanatory of the facts relied on in support of the presumption and inconsistent with such presumption. The evidence in this suit supports the presumption of payment, and is not overcome by evidence to the contrary."

In the *Clendenning Case* some ten years before the statute of limitations could have been successfully invoked against the bond sued upon, a defense of presumption of payment from the circumstances recited in the opinion was sustained by the lower and appellate court. In concluding the opinion of the latter court, Judge Harrison said: "There are many other circumstances disclosed by the record which indicate that this bond is not a valid outstanding obligation against the estate of John H. Thompson. It would, however, extend this opinion to an unnecessary length to recite the facts further. Enough has been stated to justify the conclusion that the appellants are not entitled to the relief sought.

"The circumstances of this case, together with the relations of the parties, the transactions between them, laches in the assertion of the claim, and lapse of time, are not only sufficient to raise the presumption of payment, but they lead the mind without difficulty to the conviction that this bond has long since been settled.

"It is a wise and salutary rule that forbids us to encourage stale claims. The peace and repose of society depend upon the judicious application of this principle.

"No man's estate would be safe, unless the door was, at some time, and under some circumstances, closed against demands upon it."

Of course, in the foregoing cases the question of a conflict of the evidence did not arise. Here we have this question to deal with, in view of the judgment of the court against the defendants upon the facts as heretofore narrated.

It is clear that the presumption of non-payment is not only rebuttable by proof of a forbearance to collect plus other circumstances which indicate that payment has been made, but that when there is in addition, as we have in the instant case, the uncontradicted testimony of three witnesses that the note had been paid by the delivery of hay as thereafter agreed to by its original holder, and the possession of the note by the receivers, which created the presumption of non-payment, has been explained, not by conflicting evidence, but by evidence perfectly consistent with the possession, that question is beyond the providence of court or jury to find that it has not been rebutted.

In *Mansfield* v. *Commonwealth*, 146 Va. 279, 135 S. E. 700, this court held that the presumption of guilt arising from the possession of intoxicating liquor, in spite of the jury's verdict of "guilty," had been overcome as a matter of law by evidence introduced by the defendant explaining the possession, but which was not in conflict with the evidence for the Commonwealth. The principle there enunciated is applicable here.

The plaintiffs do not deny the soundness of this principle, but they contend that there were some incon-

sistencies and contradictions in the evidence of the
defendants which presented a jury question as to
whether the presumption of non-payment had been
rebutted. For example, that the statement of Mrs.
Lehman that the price to be paid for the hay was
$40.00 per ton, whereas the account filed with the
particulars of defense shows the price to have been
$35.00 per ton.

Mr. and Mrs. Schmitt did not testify as to the price
agreed upon except by filing the account and Mrs.
Lehman was not a party to the transaction. We do
not think this is such a conflict as would weaken the
testimony of the defendants.

Again the defendants submitted with their testimony
a letter to them from Purvis written on January 18,
1921, in which he said: "If you have a couple of
hundred tons of hay, I will take it at $35.00 per ton
F. O. B. cars Hanover. Please let me know how much
hay you have and ship at once to Hanover, Virginia."
This letter was written after the agreement between
Purvis and the defendants that the note might be paid
in hay but confirms their statement that Purvis agreed
to take sufficient hay to pay the $2,000.00 note with
interest. In fact, the way bills of the R. F. & P. R. R.
show the shipment of sufficient hay to pay the note
and interest.

██ The receivers contend that Schmitt, if he had
paid the note, would have demanded its delivery to
him. It was this failure to demand and secure the
possession of the note which gave rise to the presump-
tion of non-payment and while it is ordinarily true that
careful business men do demand possession of notes
when they have paid them, the record discloses that
the Schmitts were not careful business people and that
they have not yet secured possession of the original of

the $2,000.00 note which is the subject of this suit, which has admittedly been settled. We think, as heretofore stated, that failure to get possession of the note has been satisfactorily explained.

Upon the whole we do not think that there is any conflict in the evidence. The defendants have explained the possession of the note by the receivers, and have established the fact of its payment in such a way as to overcome the presumption of non-payment, as a matter of law. The presumption of non-payment would have been sufficient to control the decision if no explanatory testimony had been produced, but as said by Mr. Justice Field, in *Lincoln* v. *French*, 105 U. S. 617, 26 L. Ed. 1189: "Presumptions are indulged in to supply the place of facts; they are never allowed against ascertained and established facts. When these appear, presumptions disappear."

We conclude, therefore, that the defendants have clearly established the fact that the note sued on in this case has been paid, and that the judgment of the Law and Equity Court of the city of Richmond should be reversed.

*Reversed and judgment.*