PRESENT: All the Justices

LAURIE A. KIDDELL, ET AL.

OPINION BY
JUSTICE CLEO E. POWELL
v.     Record No. 111236
November 1, 2012

KEN LABOWITZ, EXECUTOR OF THE
ESTATE OF LOUISE BRADFORD JUDSEN

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Alfred D. Swersky, Judge Designate

In this will contest, we consider whether the circuit court erred in instructing the jury as to the existence of the presumption of testamentary capacity.  Appellant contends that, under the facts of this case, the presumption disappeared, and it was error to instruct the jury regarding the presumption.  We conclude that the presumption does not necessarily disappear in the face of evidence to the contrary.  Moreover, the circuit court, in this case, did not rule, at the motion to strike, that the presumption had been rebutted.  Therefore, the circuit court did not err in instructing the jury about the presumption, and we affirm the circuit court's judgment.

I. FACTS AND PROCEEDINGS

Louise Bradford Judsen executed a will on April 19, 2010, ("the April will"), naming her beneficiaries: Judsen's cousin, Laurie Kiddell ("Laurie"); Laurie's husband, Lee Kiddell ("Lee"); their daughter, LeAnn Kiddell ("LeAnn"); two other

1

first cousins; and the "American Cancer Association." The April will was prepared by Laurie from an online template.

On June 15, 2010, Judsen executed another will ("the June will"), naming Kenneth E. Labowitz, an attorney, as the executor of her estate. In the June will, Judsen bequeathed her dog and a cash gift for the dog's care to Laurie. Judsen bequeathed one-third of her residuary estate to the "Leukemia & Lymphoma Society Inc.," one-third to the "American Cancer Society Inc.," and one-third to a "Head Trauma Research Center" to be chosen in the sole discretion of her executor.

Judsen died on June 18, 2010, and the June will was admitted to probate. Laurie and LeAnn (hereinafter referred to collectively as "Kiddell") filed a "Complaint to Impeach Will, Nullify Probate Order and Admit Earlier Will to Probate" against Labowitz, the Leukemia and Lymphoma Society, Inc., and the American Cancer Society, Inc. In this complaint, Kiddell alleged that Judsen lacked testamentary capacity when she executed the June will.[1] Kiddell sought to have the order admitting the June will to probate nullified and the April will admitted to probate. Labowitz filed an answer denying Kiddell's claims.[2]

---

[1] Lee was not a party to the complaint and is not a party to this appeal.
[2] The other named defendants did not respond to the complaint.

2

At a jury trial, the evidence showed that Judsen was diagnosed with a terminal illness in February 2010.  On May 13, 2010, Judsen's health had deteriorated and she was admitted to a hospital.

At the request of Laurie, who lived in Illinois, Labowitz contacted Judsen in the hospital because Laurie wanted him to assist Judsen with her financial matters.  Specifically, Laurie wanted Labowitz to be authorized to act under Judsen's power of attorney instead of Laurie.  According to Labowitz, Judsen became "upset" with Laurie for sending Labowitz "to [perform duties under] the new power of attorney."  Despite her anger, Judsen executed a new power of attorney naming Labowitz as her attorney in fact.  Labowitz testified that, during the meetings that he had with Judsen, she was insistent on returning home, concerned about her dog, and aware that she had only a small amount of cash among her assets.

According to Labowitz, Judsen also told him she wanted to execute a new will.  Consequently, Labowitz contacted Sean Dunston, an attorney practicing primarily in the area of wills, trusts, and estates, to assist Judsen with her new will.  Although Laurie sent the April will to Labowitz, Labowitz did not give Dunston the April will because Labowitz had previously filed it with the Fairfax County Circuit Court.  Labowitz did not believe that he told Dunston about this will.

3

Dunston met with Judsen at the hospital on multiple occasions concerning the preparation of her will. According to Dunston, during a meeting with Judsen on June 3, she explained that she wanted to dispose of her estate by providing for the care of her dog and leaving the residue of her estate to three specific charities. On June 14, Dunston reviewed a draft will with Judsen. Judsen indicated that there was an error in the paragraph stating that she was "not unmarried." She advised Dunston that she was divorced. When Dunston asked if she wished to include any family members as beneficiaries, Judsen answered "no." However, she told Dunston that she wanted Laurie to take care of her dog. Dunston specifically reviewed with Judsen the clause that bequeathed her residuary estate to three charities.

Dunston finalized Judsen's will and returned to the hospital on June 15 with two paralegals from his office. After Dunston read all the provisions of the will aloud to Judsen, she confirmed that the will expressed her wishes, that she was of sound and disposing mind, and that she was signing the document freely and voluntarily. Judsen then executed the will. Dunston and one of the paralegals from his office witnessed the testator's execution of her will, and the other paralegal served as the notary public in accordance with the provisions of Code § 64.1-49. According to Dunston, there was no question in his mind that when Judsen executed the June will, she knew her

4

property and the natural objects of her bounty.  She understood that she was executing a will and knew how she wished to dispose of her property.  The two paralegals also confirmed that although the testator seemed tired, she was coherent and able to respond to Dunston's questions.  Neither paralegal had any concerns about the testator's ability to execute the will.  One of them testified that the testator "fully underst[ood]" the document she was executing.

Laurie testified that she and Judsen were "very close" when they were growing up.  Since 2005, when Judsen became involved in Laurie's business, they spoke several times each week.  Laurie also testified that at some point, she talked with Judsen about drafting a will, and according to Laurie, Judsen stated that she wished to leave her estate to Laurie, her husband and daughter.  Nevertheless, Laurie admitted that Judsen became angry with her when she contacted Labowitz to assist with Judsen's financial matters.  Laurie believed that Judsen was being "spiteful" when she executed the June will with terms that were dramatically different than the terms of the April will.

James Carlton, a tenant in Judsen's home and a witness to the April will, testified that when he visited Judsen at the hospital on June 14, she did not maintain eye contact with him and responded "yes" to every question he asked her.  Carlton did not, however, see Judsen on the day she executed the June will.

5

He also stated that Judsen had a tendency to "get mad at anybody who didn't do what she wanted when she wanted."

Dr. Abdulkadir Salhan, one of Judsen's attending physicians, testified that he completed a report on June 15, 2010, for the purpose of evaluating her competency. In that report, he opined that Judsen was "not competent" and "ha[d] a disability that prevent[ed] [her] from making or communicating any responsible decisions concerning [her] property." Dr. Salhan, however, conceded that medical record notations dated June 15 stated that Judsen understood "her disease, her diagnosis, stage, and prognosis." Dr. Salhan also admitted that he did not question Judsen concerning her property, finances, or family, and that he did not specifically assess her capacity to execute a will.

Dr. Thomas Hyde, who testified at trial as an expert in the field of neurology, reviewed Judsen's medical records, treatment plan, and medications. He opined that Judsen's cognitive abilities were markedly impaired on June 15, 2010, such that she would have been precluded from fully understanding the nature and extent of her property, the members of her family and "to whom she was giving property and in what manner." Dr. Hyde further opined that Judsen would have known that she was signing a paper but would not have known what was on it.

6

At the close of Kiddell's case, Labowitz moved to strike the evidence, arguing that Kiddell failed to overcome the presumption of testamentary capacity by a preponderance of the evidence.  The circuit court denied Labowitz' motion.

At the close of all the evidence, Kiddell moved to strike Labowitz' evidence, arguing that the evidence was insufficient to prove that Judsen had testamentary capacity when she executed the June will.  The circuit court denied the motion and allowed the case to go to the jury.

In submitting the case to the jury, the parties agreed on two jury instructions, Instructions 5 and 6, related to this appeal.  Jury Instruction 5 stated:

> Your verdict must be based on the facts as you find them and on the law contained in all of these instructions.
>
> The only question in this case is whether this writing is the last will of Louise Judsen. In deciding this question, you will have to consider this issue:
>
> (1)  Did Louise Judsen have testamentary capacity when she signed it?
>
> On this issue, the proponents of the will have the burden of proof by the greater weight of the evidence.
>
> Your decision on this issue must be governed by the instructions that follow.

The instruction that followed, Jury Instruction 6, stated:

> You shall find the writing dated June 15, 2010 to be the last will [of] Louise Judsen if

the proponent proved by the greater weight of the evidence that:

    (1) Louise Judsen was capable of making a will at the time she executed the writing.

    You shall find that the writing dated June 15, 2010 was not the last will [of] Louise Judsen if the proponent failed to prove the element above.

The circuit court also granted two jury instructions over Kiddell's objection that allowed the jury to consider the existence of the presumption of testamentary capacity and whether the presumption had been rebutted. Instruction 8 stated:

    Your verdict must be based on the facts as you find them and on the law contained in all of these instructions.

    The only question in this case is whether the writing of June 15, 2010, is the last will of Louise Bradford Judsen. In deciding this question you will have to consider these issues:

    (1) The proponent of the will, the defendant Mr. Labowitz is entitled to a presumption that Ms. Judsen had testamentary capacity on June 15, 2010, at the time she executed the writing.

    (2) The opponents of the will, Laurie A. Kiddell and Leann M. Kiddell, must introduce evidence sufficient to rebut the presumption of testamentary capacity.

    (3) If you find that the opponents of the will have introduced evidence sufficient to rebut the presumption, the burden rests upon the proponent of the will to prove by the greater weight of the evidence that Ms. Judsen had testamentary capacity at the time of the execution of the June 15, 2010, writing.

Similarly, Instruction 9 stated:

> You shall find your verdict in favor of complainants, Laurie A. Kiddell and Leann M. Kiddell, if you find that they have introduced evidence sufficient to rebut the presumption of testamentary capacity and defendant, Mr. Labowitz, has failed to prove by the greater weight of the evidence that Ms. Judsen had testamentary capacity at the time of the execution of the writing.

> You shall find your verdict in favor of the defendant, Mr. Labowitz, if the complainants have failed to present evidence sufficient to overcome the presumption of testamentary capacity or defendant, Mr. Labowitz, has proved testamentary capacity at the time of execution by the greater weight of the evidence.

Kiddell objected to these instructions, arguing that because the presumption of testamentary capacity had been rebutted, the presumption disappeared and the only issue for the jury to resolve was whether Labowitz proved Judsen's testamentary capacity by the greater weight of the evidence. The trial court responded that "I haven't ruled [that] you rebutted the presumption. I ruled there was . . . sufficient evidence on the question . . . of whether you rebutted it. If you hadn't, this case would have been over this morning."[3]

---

[3] When ruling on Labowitz' motion to strike, the trial court stated that the "burden has been met," and "therefore the motion to strike will be denied." Standing alone, this statement leaves one to wonder whether the "burden" that had been "met" was the submission of sufficient evidence to survive a motion to strike or evidence sufficient to rebut the presumption. The trial court answered this question by rejecting Kiddell's

9

The jury returned a general verdict in favor of Labowitz, as executor of Judsen's estate. In a final order, the circuit court entered judgment in accordance with the jury verdict and ordered that the June will is Judsen's "Last Will and Testament." We awarded Kiddell this appeal on two issues: (1) whether the circuit court erred by granting Instructions 8 and 9; and (2) whether the circuit court erred by denying Kiddell's motion to strike the evidence.

## II. ANALYSIS

### A. Presumption of Testamentary Capacity

When reviewing whether proper jury instructions were given by a trial court, this Court's "sole responsibility . . . is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982); accord Hancock-Underwood v. Knight, 277 Va. 127, 131, 670 S.E.2d 720, 722 (2009). "Whether the content of [an] instruction is an accurate statement of the relevant legal

specific assertion during discussions regarding the jury instructions at issue, when counsel asserted that "Your Honor has ruled that we have . . . rebutted the presumption." The court immediately responded, "I haven't ruled [that] you rebutted the presumption." This clarification, coupled with the fact that the trial court proceeded to instruct the jury that there was a presumption that they should consider, clearly indicates that the trial court did not decide that Kiddell had, as a matter of law, rebutted the presumption.

10

principles is a question of law that, like all questions of law, we review de novo."  Hancock-Underwood, 277 Va. at 131, 670 S.E.2d at 722.

On appeal, Kiddell argues that the presumption disappears when a trial court determines that the opponent has presented evidence to rebut it.  Thus, according to Kiddell, it was reversible error for the court to give Instructions 8 and 9 and that only Instructions 5 and 6 were necessary to instruct the jury properly.  Labowitz responds that Instructions 8 and 9, together with Instructions 5 and 6, clearly stated which party "was aided by a presumption and the obligations of each party to present evidence on the issue of testamentary capacity." Labowitz contends he was entitled to Instructions 8 and 9 because those instructions properly informed the jury that, as the proponent of the validly executed June will, he was aided in meeting his burden of persuasion by a presumption of testamentary capacity that remained unless Kiddell produced sufficient evidence to rebut the presumption.

Generally, "[a] presumption is a rule of law that compels the fact finder to draw a certain conclusion or a certain inference from a given set of facts."  Martin v. Phillips, 235 Va. 523, 526, 369 S.E.2d 397, 399 (1988).  Thus,

> [a] party is as much entitled to a benefit of a
> presumption of law as he would be to have any
> other appropriate legal rule applied to the facts

11

of his case; and, where the facts which are required to give rise to the presumption are proven, the presumption must be applied (the presumed fact must be assumed to have been proven) until evidence sufficient to overcome the presumption and prove the contrary shall have been introduced.

Simpson v. Simpson, 162 Va. 621, 642, 175 S.E. 320, 329 (1934).

"The primary significance of a presumption is that it operates to shift to the opposing party the burden of producing evidence tending to rebut the presumption."  Martin, 235 Va. at 526, 369 S.E.2d at 399; see also Rule 2:301.

In a will contest, "the proponent of the will is entitled to a presumption that testamentary capacity existed by proving compliance with all statutory requirements for the valid execution of the will."  Gibbs v. Gibbs, 239 Va. 197, 200, 387 S.E.2d 499, 501 (1990).  Such a

> presumption arises where the will is "in writing and signed by the [testatrix] . . . in such manner as to make it manifest that the name is intended as a signature; and moreover, unless it be wholly in the handwriting of the testator, the signature shall be made or the will acknowledged by him in the presence of at least two competent witnesses, present at the same time; and such witnesses shall subscribe the will in the presence of the testator, but no form of attestation shall be necessary."

Weedon v. Weedon, 283 Va. 241, 252-53, 720 S.E.2d 552, 558 (2012) (quoting Code § 64.1-49).  The burden of persuasion always remains with the proponent of the will, but once the proponent has proven compliance with statutory requirements for

12

a valid will, the burden of production shifts to the opponent to "go forward with <u>evidence sufficient to rebut</u> the presumption." <u>Gibbs</u>, 239 Va. at 200-01, 387 S.E.2d at 501 (emphasis added).

When a word is commonly used and has an accepted meaning, a trial court need not instruct the jury as to the meaning of the word. <u>See</u> <u>Wells v. Commonwealth</u>, 60 Va. App. 111, 123-24, 724 S.E.2d 225, 231 (2012) (citing <u>Clark v. Commonwealth</u>, 220 Va. 201, 211, 257 S.E.2d 784, 790 (1979)). Black's Law Dictionary treats "sufficient evidence" and "satisfactory evidence" as synonymous. <u>State v. Narron</u>, 666 S.E.2d 860, 865 (N.C. Ct. App. 2008). It defines "satisfactory evidence" as "[e]vidence that is sufficient to satisfy an unprejudiced mind seeking the truth. – Also termed <u>sufficient evidence</u>; <u>satisfactory proof</u>." Black's Law Dictionary 639 (9th ed. 2009). "Sufficient" means "[a]dequate; of such quality, number, force or value as is necessary for a given purpose <sufficient consideration> <sufficient evidence>." <u>Id.</u> at 1571.

As early as 1908, this Court addressed the propriety of advising the jury of the presumption in will contests and allowing them to consider it. <u>Hopkins v. Wampler</u>, 108 Va. 705, 706-08, 62 S.E. 926, 927-28 (1908); <u>see also</u> <u>Tate v. Chumbley</u>, 190 Va. 480, 500-01, 57 S.E.2d 151, 160-61 (1950); <u>Jenkins v. Trice</u>, 152 Va. 411, 440, 147 S.E. 251, 260 (1929); <u>Rust v. Reid</u>,

13

124 Va. 1, 26, 97 S.E. 324, 331 (1918); Huff v. Welch, 115 Va. 74, 76, 86, 78 S.E. 573, 575, 578 (1913).

> Where, however, the sanity of the testator is put in issue by the evidence of the contestant, the *onus probandi* lies upon the proponent to satisfy the court or jury that the writing propounded is the will of a capable testator. Yet, upon the trial of that issue, there is an existent presumption in favor of the testator's sanity. Indeed, of such force is that presumption in our jurisprudence, that though one be on trial for a felony, involving life or liberty, when the defense of insanity is relied on, it must be proved to the satisfaction of the jury.

Hopkins, 108 Va. at 707, 62 S.E. at 927. A few years later, this Court approved the following instruction based on its holding in Hopkins:

> While the burden of proof is upon those offering a will for probate, to show testamentary capacity on the part of the testator at the time the will was executed to the satisfaction of the jury, yet the court tells the jury that there is in all cases an existing presumption in favor of the testator's sanity and capacity, which is to be taken into consideration by the jury in determining the question of competency.

Huff, 115 Va. at 76, 86, 78 S.E. at 575, 578.[4] For the next hundred years, the Court addressed and approved the exact same

---

[4] The jury in the instant case was specifically told to determine whether the opponents had presented sufficient evidence to rebut the presumption of testamentary capacity. In prior cases, the jury was told that they were to take "into consideration" the presumption of testamentary capacity when "determining the question of competency." Rust, 124 Va. at 26, 97 S.E. at 331; see e.g., Tate, 190 Va. at 500, 57 S.E.2d at 160; Huff, 115 Va. at 76, 86, 78 S.E. at 575, 578. Telling the

14

instruction or a close variant.  See Tate, 190 Va. at 500-01, 57 S.E.2d at 160-61; Jenkins, 152 Va. at 440, 147 S.E at 260; Rust, 124 Va. at 26, 97 S.E.2d at 331.

Here, Labowitz contends that Instructions 8 and 9 were similar to jury instructions approved by this Court in Rust and Tate.  In Rust, one of the issues on appeal involved the following jury instruction:

> While the burden of proof is upon those offering a will for probate, to show testamentary capacity on the part of the testator at the time the will was executed to the satisfaction of the jury, yet the court tells the jury that there is in all cases an existing presumption in favor of the testator's sanity and capacity, which is to be taken into consideration by the jury in determining the question of competency.

124 Va. at 26, 97 S.E. at 331 (internal quotation marks omitted).  The objecting party contended that the latter part of the instruction conflicted with the first part.  Id.  Rejecting that argument, this Court first explained that when the

---

jury to take the presumption into consideration is the functional equivalent of instructing the jury to determine whether the evidence was sufficiently rebutted.  Indeed, this practice is not without precedent in will contest cases.  With regard to lost wills, the Virginia Model Jury Instructions inform the jury that there is a presumption that a will that was in the possession of the decedent prior to his death but cannot be found after his death was destroyed and "[t]o overcome this presumption the burden is on [the proponent] to prove by clear and convincing evidence that [decedent] did not revoke the will."  2 Virginia Model Jury Instructions – Civil, No. 48.055, at 48-27 (repl. ed. 2011).

15

proponent of a will shows compliance with all the statutory requirements for due execution, "the legal presumption of sanity comes to his relief and dispenses with any evidence to the contrary." Id. at 25, 97 S.E. at 331.

In Tate, the issue at trial was "which, if either, of two paper writings, both being testamentary in character, dated respectively April 27, 1915, and November 29, 1916 . . . constitute[d the] last will and testament" of Margaret S. Tate. 190 Va. at 485-86, 57 S.E.2d at 153.  A jury returned a verdict sustaining the 1916 will.  Id. at 486, 57 S.E.2d at 154. Evidence at trial showed that Tate was "mentally capable" of making the 1915 will but that during the six months thereafter, her mental capacity became impaired.  Id. at 489, 57 S.E.2d at 155.  On November 23, 1915, she was "adjudged to be insane." Id.

> In that case, the jury was instructed, inter alia, that
>
> while the burden of proof is upon those offering
> a will for probate, to show testamentary capacity
> on the part of the testatrix at the time the will
> was executed to the satisfaction of the jury, yet
> the court tells the jury that all persons who
> have not been adjudged insane are presumed to be
> sane and capable of making a will until the
> contrary is proved, and that this presumption is
> to be taken into consideration by the jury in
> determining the question of competency.

16

Id. at 500, 57 S.E.2d at 160 (internal quotation marks omitted). This Court again approved instructing a jury as to the presumption of testamentary capacity.

Thus, recognizing that this Court has a long history of approving jury instructions on the presumption of testamentary capacity, we must determine whether such instructions were appropriate in this case.

As Kiddell correctly argues, in most contexts in Virginia, a presumption disappears when the presumption is rebutted as a matter of law. Kavanaugh v. Wheeling, 175 Va. 105, 113, 7 S.E.2d 125, 128 (1940). However, Kiddell's contention that the presumption of testamentary capacity disappears in the face of any evidence presented to the contrary is incorrect.

> A presumption of law cannot be said to be rebutted where the evidence of equally credible witnesses for and against the presumption is equally balanced. The rebutter has not carried the burden imposed upon him by law. Where the evidence for and against the presumption are equal the presumption will prevail.

Rowe v. Rowe, 144 Va. 816, 822, 130 S.E. 771, 772 (1925). "The presumption of sanity is rebuttable, but it is not necessarily extinguished by conflicting evidence." Nelms v. Nelms, 236 Va. 281, 287, 374 S.E.2d 4, 8 (1988).

Kiddell's argument not only ignores the fact that the trial court did not actually rule that the presumption was rebutted, but also, in persisting in her argument, Kiddell ignores the

17

trial court's ultimate role in ruling on a motion to strike. "In ruling on a motion to strike, trial courts should not undertake to determine the truth or falsity of testimony or to measure its weight." Williams v. Vaughan, 214 Va. 307, 310, 199 S.E.2d 515, 517-18 (1973). "The credibility of witnesses and the weight to be given their testimony are matters peculiarly within the province of the jury." Id. at 310, 199 S.E.2d at 517; see also Higgins v. Bowdoin, 238 Va. 134, 141, 380 S.E.2d 904, 908 (1989) (holding the trial court failed to adhere to the principles governing motions to strike when it "undertook to determine the truth or falsity of the testimony and to weigh the evidence"). For purposes of the motion to strike, a trial court must "accept as true all evidence favorable to a plaintiff and any reasonable inferences that may be drawn from such evidence." James v. City of Falls Church, 280 Va. 31, 38, 694 S.E.2d 568, 572 (2010).

In ruling on Labowitz' motion to strike Kiddell's evidence, the trial court was required to accept as true all evidence favorable to Kiddell and any reasonable inferences therefrom. It necessarily follows that when the trial court denied Labowitz' motion to strike, it implicitly found that the evidence presented by Kiddell, if accepted by the jury as true and given sufficient weight, could rebut the presumption of testamentary capacity. However, the determination of whether

18

the evidence did, in fact, rebut the presumption, was not made by the trial court when it ruled on the motion to strike. The trial court's denial of Labowitz' motion to strike amounted only to a ruling that Kiddell's evidence could potentially rebut the presumption, not that it did, as a matter of law, rebut the presumption.

Indeed, to hold otherwise would improperly equate the denial of a motion to strike with the granting of a motion for partial summary judgment. The trial court may only enter a partial summary judgment when it has granted a motion to strike. See Code § 8.01-378. When the trial court has denied a motion to strike, "the trial continues as if the motion had not been made." William H. Bryson, Bryson on Virginia Civil Procedure § 11.05[4] (4th ed. 2005). Therefore, when the trial court denied Labowitz' motion to strike, the trial was to continue, as it did, with the presumption in favor of testamentary capacity still in place and for consideration by the jury.

The existence of the presumption of testamentary capacity is a matter of law, but whether the presumption has been sufficiently rebutted is a question of fact. Given the necessary role of the presumption in the factual determinations, the presumption does not disappear unless, as a matter of law, no rational finder of fact could find that the presumption had not been rebutted.

Unlike in some other jurisdictions, in Virginia a presumption disappears only if rebutted by ascertained or established facts or by substantial evidence "showing the true facts to be to the contrary." Kavanaugh, 175 Va. at 113, 7 S.E.2d at 128(emphasis added); Schmitt v. Redd, 151 Va. 333, 344, 143 S.E. 884, 887 (1928); but cf., In re Mid-South Towing Co., 418 F.3d 526, 531 (5th Cir. 2005) ("Evidentiary presumptions . . . are designed to fill a factual vacuum. Once evidence is presented . . . presumptions become superfluous because the parties have introduced evidence to dispel the mysteries that gave rise to the presumptions."); Hertz v. Record Publ'g Co., 219 F.2d 397, 399 (3d Cir. 1955) (holding that a presumption "disappears when contrary evidence of the fact in issue is introduced"); Heffenger v. Heffenger, 3 A.2d 95, 97 (N.H. 1938) ("When there is either evidence, or an inference from evidence, bearing upon the issue of a testator's intention to include or exclude a particular item of property from the terms of his will the presumption against partial intestacy disappears."). Once Labowitz presented evidence that the June will was executed in compliance with statutory requirements, there was a presumption that Judsen had testamentary capacity at the time she executed that will. That presumption could be rebutted by evidence that Judsen was not competent at that time. However, even when the opponent of a will produces evidence

20

that, if believed, could ascertain or establish facts sufficient to rebut the presumption of the testator's capacity, the determination of whether the presumption has been rebutted is to be determined by the jury, unless the opponent has rebutted the presumption as a matter of law.  The evidence presented by Kiddell, while potentially sufficient to rebut the presumption of capacity if believed, did not, as a matter of law, ascertain or establish Judsen's incapacity as a true fact.  Thus, it was not sufficient to rebut the presumption as a matter of law.  The circuit court did not err in ruling that the presumption had not been rebutted or in sending the evidence to the jury.

When the proponent of a will enjoys the presumption of testamentary capacity, the jury must be instructed as to this presumption.  Where the evidence is in equipoise, the presumption comes to the proponent's rescue, allowing him to prevail.  Indeed, if the jury is not advised of the presumption, the proponent is deprived of this benefit and, in the face of equal evidence, would be found to have not carried his burden even though the law is otherwise.  For this reason, we hold that the presumption of testamentary capacity does not disappear, unless the circuit court rules that the presumption was rebutted as a matter of law because no rational fact finder could find that the presumption had not been rebutted.  In this case, the circuit court did not err in instructing the jury as to the

existence of the presumption.

## B. Motion to Strike the Evidence

Kiddell also argues that the circuit court erroneously denied the motion to strike Labowitz' evidence because he failed to prove Judsen was aware of her family members and the natural objects of her bounty when she executed the June will.  In light of the terms of Judsen's April will leaving her estate primarily to Laurie, Lee Kiddell, and LeeAnn Kiddell and also naming 12 other relatives who were to receive nothing, Kiddell contends that it was incumbent upon Labowitz to prove that Judsen was aware of all these individuals when she executed the June will.  According to Kiddell, even Dunston had no knowledge of the Judsen's family members because he was not aware of the April will.

Kiddell does not challenge the sufficiency of the evidence to sustain the jury verdict.  Instead, by challenging the circuit court's refusal to sustain her motion to strike Labowitz' evidence, Kiddell contends that Labowitz failed to establish a prima facie case of testamentary capacity because he failed to prove that Judsen knew the natural objects of her bounty.  See Costner v. Lackey, 223 Va. 377, 382, 290 S.E.2d 818, 820 (1982) ("In considering the motion to strike the plaintiffs' evidence, the trial court was not sitting as the fact finder but was ruling on a matter of law to determine

22

whether the [plaintiffs] had made out a prima facie case.").
When considering such a motion to strike, a trial court must
review the evidence in the light most favorable to the non-
moving party. Baysden v. Roche, 264 Va. 23, 25, 563 S.E.2d 725,
726 (2002). The same standard applies to our review of the
trial court's decision on the motion to strike. Id. at 26, 563
S.E.2d at 726.

Generally, "[t]estamentary capacity is the term used to
describe the degree of mental capacity required for the valid
execution of a will." Gibbs, 239 Va. at 199, 387 S.E.2d at 500.
Such capacity exists, if at the time a will is executed, the
testator is " 'capable of recollecting her property, the natural
objects of her bounty and their claims upon her, knew the
business about which she was engaged and how she wished to
dispose of the property.' " Weedon, 283 Va. at 252, 720 S.E.2d
at 558 (2012) (quoting Tabb v. Willis, 155 Va. 836, 859, 156
S.E. 556, 564 (1931)). The time of a will's execution "is the
critical time for determining testamentary capacity." Thomason
v. Carlton, 221 Va. 845, 853, 276 S.E.2d 171, 175 (1981); accord
Parish v. Parish, 281 Va. 191, 200, 704 S.E.2d 99, 104 (2011).
The testimony of witnesses present at the time of execution is
entitled to "the greatest consideration" on the issue of a
testator's mental capacity. Id. "[I]n determining the mental
capacity of a testator, great weight is to be attached to the

23

testimony of the draftsman of the will, of the attesting witnesses, and of attending physicians."  Hall v. Hall, 181 Va. 67, 76, 23 S.E.2d 810, 814 (1943); accord Parish, 281 Va. at 200, 704 S.E.2d at 105.

According to Dunston, who drafted the June will and witnessed its execution, Judsen fully understood that she was executing a will.  He described Judsen as knowing her property, the natural objects of her bounty, and her wishes for the disposal of her assets.  The two paralegals from his office, one who served as a witness to the execution of the June will and the other who served as the notary public, agreed.  Both testified that they would not have witnessed or notarized the will if they had doubted that Judsen understood what she was doing or if she had seemed confused.

Furthermore, Dunston testified that he asked Judsen if she wished to include any family members as beneficiaries and she responded "no."  She did, however, leave a cash gift and her dog to Laurie, and she requested that the bequest to the "Leukemia & Lymphoma Society Inc." be made in the name of her mother. Moreover, both Laurie and Labowitz testified that Judsen became angry with Laurie when she asked Labowitz to have Judsen substitute him for her as Judsen's attorney in fact.

This evidence, however, was in conflict with the testimony of Dr. Salhan and Dr. Hyde.  Both opined that on June 15, 2010,

24

Judsen was not capable of making decisions about her property. When a conflict exists in the "testimony on a material point, or if reasonably fair-minded [persons] may differ as to the conclusions of fact to be drawn from the evidence, or if the conclusion is dependent on the weight to be given the testimony," a jury issue exists. State Farm Mut. Auto. Ins. Co. v. Davies, 226 Va. 310, 319, 310 S.E.2d 167, 171 (1983) (internal quotation marks omitted); accord Cohn v. Knowledge Connections, Inc., 266 Va. 362, 366, 585 S.E.2d 578, 581 (2003); O'Brien v. Everfast, Inc., 254 Va. 326, 330, 491 S.E.2d 712, 714 (1997). Thus, the circuit court did not err by refusing to strike Labowitz' evidence and, instead, allowing the issue of testamentary capacity to be decided by the jury.

### III. CONCLUSION

The circuit court did not err in granting Instructions 8 and 9, nor did it err in refusing to grant Kiddell's motion to strike Labowitz' evidence. Therefore, we will affirm the circuit court's judgment.

Affirmed.


CHIEF JUSTICE KINSER, with whom JUSTICE LEMONS and JUSTICE MIMS join, concurring in part and dissenting in part.

In Kavanaugh v. Wheeling, 175 Va. 105, 7 S.E.2d 125 (1940), this Court held that if a presumption "is rebutted or overcome

25

by substantial evidence showing the true facts to be to the contrary, the presumption disappears." Id. at 113, 7 S.E.2d at 128. The majority does not disagree with this principle. Citing Kavanaugh, the majority, nevertheless, concludes that the presumption of testamentary capacity does not disappear unless, as a matter of law, no rational finder of fact could find that the presumption has not been rebutted.[1] Continuing, the majority concludes that because the evidence presented by the opponents of the will did not establish the testator's incapacity as a matter of law, it was not sufficient to rebut the presumption. Finally, the majority holds that if the evidence is in equipoise, the presumption of testamentary capacity "comes to the proponent's rescue, allowing him to prevail."

Under the majority's construct, the presumption remains in the case as positive evidence to be weighed in determining whether the proponent has carried the ultimate burden of proving testamentary capacity by a preponderance of the evidence unless the opponent has established testamentary incapacity as a matter of law. In my view, that test for determining when the presumption of testamentary capacity disappears is inconsistent with the principle stated in Kavanaugh. Moreover, a finding that the opponent of a will has proven testamentary incapacity

---

[1] The decision in Kavanaugh does not hold that a presumption disappears only when rebutted "as a matter of law."

26

as a matter of law means that no rational fact finder could find the existence of testamentary capacity when the will was executed and judgment must therefore be entered in favor of the opponent. Furthermore, assuming the majority is correct in its conclusion that, unless the opponent establishes testamentary incapacity as a matter of law, the presumption of testamentary capacity remains as evidence in the case and aids the proponent in carrying the ultimate burden of persuasion, Instructions 8 and 9 did not instruct the jury accordingly. The majority, nevertheless, holds that the circuit court did not err by giving Instructions 8 and 9.

Unlike the majority, I believe that the presumption of testamentary capacity disappears when an opponent goes forward with evidence sufficient to rebut the presumption. In my view, the presumption is not evidence for a jury to consider. Thus, I respectfully concur in part and dissent in part.[2]

In a will contest, a presumption of testamentary capacity arises when the proponent of a will proves compliance with all statutory requirements for the valid execution of the will. Gibbs v. Gibbs, 239 Va. 197, 200, 387 S.E.2d 499, 501 (1990). "The primary significance of a presumption is that it operates

---

[2] I concur with part II, section B. of the majority opinion and agree that the circuit court did not err by denying the opponents' motion to strike the evidence.

27

to shift to the opposing party the burden of producing evidence tending to rebut the presumption."  Martin v. Phillips, 235 Va. 523, 526, 369 S.E.2d 397, 399 (1988).  To rebut the presumption of testamentary capacity, the opponent of the will must go forward with evidence sufficient to rebut the presumption. Gibbs, 239 Va. at 201, 387 S.E.2d at 501.  When "the facts which are required to give rise to the presumption are proven, the presumption must be applied (the presumed fact must be assumed to have been proven) until evidence sufficient to overcome the presumption and prove the contrary shall have been introduced." Simpson v. Simpson, 162 Va. 621, 642, 175 S.E. 320, 329 (1934) (emphasis added).

As we explained in Kavanaugh, a presumption disappears when evidence sufficient to rebut it is introduced.  175 Va. at 113, 7 S.E.2d at 128.  There, a plaintiff sought to recover damages for personal injuries sustained when an automobile owned by defendants was negligently operated by their employee.  Id. at 108, 7 S.E.2d at 125.  The defendants asserted that, at the time of the accident, the employee was not operating the vehicle within the scope of his employment but rather was using it for his own "mission."  Id.  The plaintiff argued that certain evidence adduced at trial, along with "the prima facie presumption that the automobile was being operated in the business of its owners," was sufficient to present to the jury

28

the question whether the employee was acting within the scope of his employment at the time of the accident. Id. at 111-12, 7 S.E.2d at 127.

We concluded that the trial court erred by failing to sustain a motion to strike at the close of the evidence. Discussing the presumption that "proof that [an] automobile was owned by [a] defendant establishes a prima facie case that the automobile was being operated by the defendant or someone for him, under circumstances making him liable" for injuries sustained by the negligent operation of the vehicle, we explained that the prima facie case was "merely an inference or presumption that may be rebutted, with the burden of overcoming it resting upon the defendant." Id. at 112-13, 7 S.E.2d at 128. Continuing, we stated:

> This prima facie presumption, like other presumptions, cannot stand in the face of positive facts to the contrary. . . . Therefore, if the presumption thus created is rebutted or overcome by substantial evidence showing the true facts to be to the contrary, the presumption disappears. Presumptions give way to ascertained or established facts.

Id. at 113, 7 S.E.2d at 128.

In other words, " '[p]resumptions are indulged in to supply the place of facts; they are never allowed against ascertained and established facts. When these appear, presumptions disappear.' " Schmitt v. Redd, 151 Va. 333, 344, 143 S.E.2d

29

884, 887 (1928) (quoting Lincoln v. French, 105 U.S. 614, 617 (1882)). See also Virginia Birth-Related Neurological Injury Comp. Program v. Young, 34 Va. App. 306, 310-11, 541 S.E.2d 298, 300-01 (2001) (explaining that, under one theory, a presumption disappears if evidence is produced to rebut the presumption); In re Mid-South Towing Co., 418 F.3d 526, 531 (5th Cir. 2005) ("Evidentiary presumptions . . . are designed to fill a factual vacuum. Once evidence is presented . . . presumptions become superfluous because the parties have introduced evidence to dispel the mysteries that gave rise to the presumptions."); Hertz v. Record Publ'g Co., 219 F.2d 397, 399 (3d Cir. 1955) (holding that a presumption "disappears when contrary evidence of the fact in issue is introduced"); Richmond Sand & Gravel Corp. v. Tidewater Constr. Corp., 170 F.2d 392, 394 (4th Cir. 1948) ("The presumption is not evidence for the consideration of the jury . . . and once rebutted in either of these fashions, disappears from the case."); Heffenger v. Heffenger, 3 A.2d 95, 97 (N.H. 1938) ("When there is either evidence, or an inference from evidence, bearing upon the issue of a testator's intention to include or exclude a particular item of property from the terms of his will the presumption against partial intestacy disappears."); Dromgoole v. White, 239 N.Y.S.2d 747, 748 (N.Y. App. Div. 1963) (A "presumption is not evidence but serves in place of evidence until the opposing party comes forward with

his proof, whereat it disappears.  It has no weight as evidence and is never to be considered in weighing evidence."); but cf. City of Hopewell v. Tirpak, 28 Va. App. 100, 117, 502 S.E.2d 161, 169 (1998) (discussing "three . . . presumptions in Virginia law that have the effect of shifting both the burdens of production and persuasion with regard to a particular factual issue").

Contrary to the majority and Kenneth E. Labowitz, the proponent of the will at issue, our decisions in Tate v. Chumbley, 190 Va. 480, 57 S.E.2d 151 (1950); Jenkins v. Trice, 152 Va. 411, 147 S.E. 251 (1929); Rust v. Reid, 124 Va. 1, 97 S.E. 324 (1918); Huff v. Welch, 115 Va. 74, 78 S.E. 573 (1913); and Hopkins v. Wampler, 108 Va. 705, 62 S.E. 926 (1908), did not address, much less answer, the question whether the presumption of testamentary capacity disappears when rebutted by sufficient evidence of incapacity or as the majority concludes, when the opponent establishes the testator's incapacity as a matter of law.  Quoting jury instructions from those cases, the majority states that "this Court has a long history of approving jury instructions on the presumption of testamentary capacity."

Instructions in those cases did tell the jury that a presumption exists in favor of a testator's capacity and that the presumption was to be considered in determining competency. However, in all those cases, this Court discussed jury

31

instructions to address issues different than the one now before us.  Not one of those cases even tangentially involved the question whether the presumption of testamentary capacity disappears when rebutted by sufficient evidence of incapacity. The majority does not claim otherwise, nor can it.  Thus, the mere fact that the instructions were given and quoted with approval is not dispositive in the instant case.  See Gibbs, 239 Va. at 202, 387 S.E.2d at 501 (stating that the fact an instruction similar to one challenged on appeal was given in another case was "not instructive in the instant case").  Any suggestion otherwise cannot stand in the face of our cases that have dealt specifically with rebuttable presumptions and recognize that they disappear when rebutted.  See Kavanaugh, 175 Va. at 113, 7 S.E.2d at 128 (holding that "if the presumption . . . created is rebutted or overcome by substantial evidence . . . , the presumption disappears"); Simpson, 162 Va. at 642, 175 S.E. at 329 (holding that "the presumption must be applied (the presumed fact must be assumed to have been proven) until evidence sufficient to overcome the presumption and prove the contrary shall have been introduced"); Schmitt, 151 Va. at 344, 143 S.E. at 887 (" 'Presumptions are indulged in to supply the place of facts; they are never allowed against ascertained and established facts.  When these appear, presumptions disappear.' ") (quoting Lincoln, 105 U.S. at 617).

Moreover, Instructions 8 and 9 are different from those given in Tate, Jenkins, Rust, and Huff. Those instructions told the jury to consider the presumption when determining the question of competency. In contrast, Instructions 8 and 9 did not inform the jury that it should consider the presumption in determining whether Labowitz, as the proponent of the will, met his burden of proving testamentary capacity by a preponderance of the evidence. Instead, Instruction 8 informed the jury that Labowitz was entitled to a presumption that the testator had testamentary capacity at the time she executed the will at issue, that Laurie Kiddell and LeAnn Kiddell (collectively referred to as "Kiddell"), must introduce evidence "sufficient" to rebut the presumption, and that, if Kiddell did so, Labowitz had the burden to prove testamentary capacity by the greater weight of the evidence. Instruction 9 told the jury to decide in favor of Kiddell, if they "introduced evidence sufficient to rebut the presumption of testamentary capacity" and if Labowitz then "failed to prove by the greater weight of the evidence" that the testator had testamentary capacity when she executed the will. The instructions further told the jury to find in favor of Labowitz if Kiddell failed to rebut the presumption of testamentary capacity or if Labowitz proved testamentary capacity "by the greater weight of the evidence."

33

Thus, contrary to the majority's assertion, nothing in Instructions 8 or 9 was the "functional equivalent" of the instructions recited in our prior cases because those instructions did not inform the jury that the opponent had to go forward with evidence to rebut the presumption of testamentary capacity, nor did they tell the jury to decide if the opponent had rebutted the presumption of testamentary capacity. Furthermore, contrary to the majority's construct of the role the presumption plays, Instructions 8 and 9 did not tell the jury that if the evidence is in equipoise, the presumption tips the scales in favor of Labowitz and permits a finding that he proved testamentary capacity by a preponderance of the evidence. Yet, this is one of the reasons offered by the majority to explain why a jury must be instructed about the presumption of testamentary capacity. Thus, using the majority's rationale, the circuit court erred by giving Instructions 8 and 9. But, the majority does not so hold. Consequently, trial courts in the future will not know whether to instruct a jury in a will contest using instructions like those in our prior cases or instructions similar to Instructions 8 and 9.

In my view, the presumption of testamentary capacity arose when Labowitz demonstrated that the testator executed the will at issue in accordance with the requirements of Code § 64.1-49. The presumption remained in the case "until evidence sufficient

34

to overcome the presumption and prove the contrary [was] introduced."  Simpson, 162 Va. at 642, 175 S.E. at 329.  Thus, Kiddell had to go forward with evidence of testamentary incapacity sufficient to rebut the presumption.[3]  If Kiddell failed to do so, then the presumption remained and Labowitz was entitled to judgment in his favor at that point in the trial.[4]

When Labowitz moved to strike Kiddell's evidence, arguing that the opponents had failed to rebut the presumption of testamentary capacity, the circuit court stated that "the only question is whether or not there is evidence presented by the opponents of the will to rebut the presumption of capacity. And the [c]ourt is going to find that that burden has been met by the [opponents] and therefore the motion to strike will be denied."[5]  Thus, as explained by this Court in both Kavanaugh and

---

[3] Kiddell had to present "sufficient" evidence, not merely "any" evidence, of incapacity.

[4] A presumption is not rebutted and prevails when "evidence of equally credible witnesses for and against the presumption is equally balanced."  Rowe v. Rowe, 144 Va. 816, 822, 130 S.E. 771, 772 (1925); see also Nelms v. Nelms, 236 Va. 281, 287, 374 S.E.2d 4, 8 (1988).

[5] The majority states that it is unclear whether the circuit court concluded that Kiddell had rebutted the presumption because of its later decision to give Instructions 8 and 9. During the colloquy regarding jury instructions, the circuit court stated it had not ruled that the opponents rebutted the presumption but had ruled that there "was . . . sufficient evidence on the question . . . of whether you rebutted it.  If [the opponents] had [not], this case would have been over this morning."  The court's last statement is unquestionably correct. Moreover, under our prior decisions, a finding of sufficient evidence to rebut the presumption of testamentary capacity means

<u>Simpson</u>, the presumption of testamentary capacity disappeared at that point. Accordingly, the circuit court erred by granting Instructions 8 and 9. See <u>Diederich v. Walters</u>, 357 N.E.2d 1128, 1132 (Ill. 1976) (once evidence opposing the presumption comes into the case, the presumption ceases to operate, "therefore eliminat[ing] the need for any instruction to the jury regarding the presumption"); <u>Breadheft v. Cleveland</u>, 110 N.E. 662, 663 (Ind. 1915) ("The ordinary function of most so-called presumptions of law, as they relate to the law of evidence, is to cast on the party against whom the presumption works, the duty of going forward with evidence, and when that duty is performed the presumption is <u>functus</u> <u>officio</u> and has no proper place in the instructions to the jury."); <u>United Missouri Bank v. March</u>, 650 S.W.2d 678, 680-81 (Mo. Ct. App. 1983) ("[W]hen some substantial evidence is produced by the party presumed against, 'however slight' the presumption disappears and the trier of facts receives the issue free of the presumption.").

Finally, I point out that, under the majority's decision today, a jury will determine whether the opponent of a will has

---

the presumption is rebutted. <u>Gibbs,</u> 239 Va. at 201, 387 S.E.2d at 501. The majority's conclusion that the circuit court's denial of Labowitz's motion to strike "amounted only to a ruling that Kiddell's evidence could potentially rebut the presumption" begs the question whether a trial court or a jury decides if the opponent of a will has rebutted the presumption of testamentary capacity. In my view, a trial court makes that determination.

rebutted the presumption of testamentary capacity.  The

majority, however, gives no guidance as to the definition of the

legal standard of "sufficient evidence."[6]  So, each jury in a

will contest will have to decide what is meant by "evidence

sufficient to rebut the presumption of testamentary capacity."

I fear that different juries will use varying definitions.  Even

the circuit court in ruling on Labowitz's motion to strike noted

the absence in our jurisprudence of a definable evidentiary

standard to employ in deciding if the opponent of a will has

rebutted the presumption of testamentary capacity.  Perhaps the

absence of such guidance is indicative of the fact that a jury

in such a case does not decide whether a presumption, operating

as a rule of law, has been rebutted.  See Martin v. Phillips,

235 Va. 523, 526, 369 S.E.2d 397, 399 (1988) ("A presumption is

a rule of law . . . .").

For these reasons, I conclude that the circuit court erred

by giving Instructions 8 and 9.  Instructions 5 and 6 correctly

---

[6] The majority states that the phrase "sufficient evidence" has a commonly accepted definition and that a trial court, therefore, does not need to instruct a jury as to its meaning. But if a jury is instructed as to the meaning of the phrase "greater weight of the evidence" or "preponderance of the evidence" and is also told that the opponent of a will must present "sufficient evidence" to rebut the presumption of testamentary capacity, it is unclear that a jury will know that it should apply its common understanding of the phrase "sufficient evidence."

stated the applicable law.[7]  I respectfully concur in part and dissent in part, and I would remand this case to the circuit court for a new trial.

---

[7] Instructions 5 and 6 are set forth in 2 Virginia Model Jury Instructions - Civil, No. 48.040, at 48-19 (repl. ed. 2011).

JUSTICE McCLANAHAN, concurring.

I agree with the majority's holding that the circuit court did not err in granting Instructions 8 and 9 or in refusing to grant Kiddell's motion to strike Labowitz's evidence. I write separately because I believe it is unnecessary for us to determine whether the evidence in this case was sufficient to rebut the presumption of testamentary capacity as a matter of law because Kiddell did not move the circuit court for such a determination.

When Kiddell objected to Instructions 8 and 9, she argued that in denying Labowitz's motion to strike, the circuit court ruled that the presumption of testamentary capacity had been rebutted as a matter of law. As the majority states, however, the circuit court did not rule that the presumption had been rebutted. Rather, the circuit court ruled that Kiddell had presented sufficient evidence to permit the jury to determine whether the presumption had been rebutted. Furthermore, as the majority explains, when the circuit court denied Labowitz's motion to strike, it could not have ruled that the presumption had been rebutted as a matter of law since such a ruling would have amounted to the granting of a motion for partial summary judgment at trial. See Code § 8.01-378 (circuit court may only enter partial summary judgment when it has granted a motion to

39

strike).  Thus, the only ruling made by the circuit court on the issue of whether Kiddell rebutted the presumption of testamentary capacity was that Kiddell presented sufficient evidence to submit this issue to the jury.

Kiddell did not move for partial summary judgment on the issue of whether she rebutted the presumption as a matter of law, but only opposed the motion to strike her evidence.[1] Therefore, the issue of whether Kiddell rebutted the presumption as a matter of law was not before the circuit court and is not before this Court.  Since the circuit court did not rule, and indeed could not have ruled, that the presumption was rebutted as a matter of law when it denied Labowitz's motion to strike, I would hold that it was not error for the circuit court to instruct the jury regarding the presumption of testamentary capacity.[2]  However, because Kiddell did not move for partial

---

[1] In fact, had Labowitz simply not made the motion to strike, the issue of whether Kiddell presented sufficient evidence to rebut the presumption of testamentary capacity would not have been addressed by the court prior to its instructions to the jury.

[2] I agree with the majority that the content of instructions 8 and 9 was consistent with instructions on the presumption of testamentary capacity that this Court has previously approved and, thus, was an "accurate statement of the relevant legal principles."  Hancock-Underwood v. Knight, 277 Va. 127, 131, 670 S.E.2d 720, 722 (2009).  See, e.g., Tate v. Chumbley, 190 Va. 480, 500, 57 S.E.2d 151, 160 (1950); Culpepper v. Robie, 155 Va. 64, 70, 154 S.E. 687, 689 (1930); Jenkins v. Trice, 152 Va. 411, 440, 147 S.E. 251, 260 (1929); Green v. Green's Ex'rs, 150 Va. 452, 462, 143 S.E. 683, 686 (1928); Rust v. Reid, 124 Va. 1, 26, 97 S.E. 324, 331 (1918); Huff v. Welch, 115 Va. 74, 76, 86, 78

summary judgment on the issue of whether she rebutted the presumption as a matter of law, I would not address whether Kiddell, in fact, rebutted the presumption as a matter of law.

---

S.E. 573, 757, 578 (1913) (holding that the trial court did not err in giving instruction informing jury that in "all cases there is an existing presumption in favor of testator's sanity and capacity, which is to be taken into consideration by the jury in determining the question of competency).